IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SWAROVSKI AKTIENGESELLSCHAFT and SWAROVSKI NORTH AMERICA LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"<br><br>Defendants. | Case No. 19-cv-06568 |

## COMPLAINT

Plaintiffs Swarovski Aktiengesellschaft and Swarovski North America Limited (collectively, "Swarovski" or "Plaintiffs") hereby bring the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and allege as follows:

### I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)–(b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly

targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial Internet stores operating under the Defendant Domain Names and/or the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products using infringing and counterfeit versions of Swarovski's trademarks. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products using infringing and counterfeit versions of Swarovski's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Swarovski substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Swarovski to combat Internet Store operators who trade upon Swarovski's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products using infringing and counterfeit versions of Swarovski's federally registered trademarks (collectively, the "Counterfeit Swarovski Products"). Upon information and belief, Defendants create the Defendant Internet Stores by the dozens and design them to appear to be selling genuine Swarovski branded products, while actually infringing Swarovski's trademarks and selling Counterfeit Swarovski Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of

2

transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation. Swarovski is forced to file these actions to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Swarovski Products over the Internet. Swarovski has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

**Plaintiffs**

4. Plaintiff Swarovski Aktiengesellschaft ("SAG") is a Liechtenstein joint-stock company with its principal place of business at Droschistrasse 15 FL-9495 Triesen, Liechtenstein. SAG owns all right, title and interest in and to the SWAROVSKI® mark and name for use in connection with a wide range of goods and services.

5. Plaintiff Swarovski North America Limited ("SNA") is a Rhode Island corporation with its principal place of business at One Kenney Drive, Cranston, Rhode Island 02920. SNA uses the SWAROVSKI® mark under express permission from SAG.

6. Swarovski is a world-famous designer, manufacturer and distributor of crystals, jewelry and other fine, luxury products. With more than 120 years of experience in high-quality craftsmanship and mastery of precision cutting, Swarovski is known for its crystals of unmatched range and brilliance. They are used in creative industries such as fashion, jewelry, accessories, interior design, and lighting. Swarovski crystals are the most technologically advanced in the world.

7. Swarovski designs, manufactures, and sells many high-quality crystal and gemstone products, including, but not limited to, jewelry, watches, accessories, handbags, sunglasses, figurines, and other decorative items (these and other genuine Swarovski branded products are collectively referred to herein as the "Swarovski Products"). Swarovski's finely crafted jewelry, watches, and fashion accessories provide modern and multifaceted women with a unique touch of sparkle, glamour, and elegance. Each of Swarovski's eye-catching designs is infused with technical expertise and a passion for detail that has characterized the brand since its inception in 1895.

8. Swarovski Products are sold in approximately 170 countries worldwide, with production locations based in Austria, India, Thailand, Vietnam, Serbia and the United States. Number one in the fashion jewelry segment, Swarovski sells its creations in approximately 2,680 of its own branded stores around the globe, including 281 stores in the United States and a boutique in Chicago's Magnificent Mile shopping district.

9. Since its founding in 1895, the unique and highly desirable Swarovski Products have led to enormous growth and financial success for Swarovski. In 2015 Swarovski reported revenue of more than $3.76 Billion, with the crystal business alone generating revenue of more than $285 Million in the United States and over $2.9 Billion worldwide.

10. The root of this financial success lies in Swarovski's ability to consistently deliver highly desirable Swarovski Products. Swarovski Products have become enormously popular and even iconic, driven by Swarovski's arduous quality standards and innovative designs. Among the purchasing public, genuine Swarovski Products are instantly recognizable as such. In the United States and around the world, the Swarovski brand has come to symbolize high quality, and Swarovski Products are among the most recognizable in the world.

11. Providing genuine Swarovski branded retail store services over the Internet to sell genuine Swarovski Products is an important part of Swarovski's business strategy. Since 1996, Swarovski has operated a website at Swarovski.com where it promotes and sells genuine Swarovski Products. The Swarovski.com website features proprietary content, images and designs exclusive to Swarovski.

12. Swarovski has been using its trademarks in commerce continuously and consistently in the United States for many decades. Swarovski's trademarks are critical to its business. Swarovski is the owner of and has widely promoted several trademarks which have earned substantial fame and considerable goodwill among the public. Swarovski has used its family of trademarks (collectively, the "SWAROVSKI Trademarks") on or in close connection with its line of jewelry, figurines, and accessories, as well as in connection with packaging, retail store services, and online e-commerce. Swarovski Products and/or its packaging always include at least one of the SWAROVSKI Trademarks. Swarovski incorporates a variety of distinctive marks in its various Swarovski Products. Consequently, the United States Patent and Trademark Office has granted Swarovski multiple federal trademark registrations. Swarovski currently owns 69 federal trademark registrations and eight pending applications, and it uses the SWAROVSKI Trademarks in connection with the marketing of its Swarovski Products. The SWAROVSKI Trademarks, including but not limited to those listed below, are famous and valuable assets of Swarovski.

| Registration No. | Trademark | Goods and Services |
|---|---|---|
| 934,915 | SWAROVSKI | For: Natural and imitation jewelry, cut and uncut semi-precious stones, beads for stringing into necklaces, or for attaching to fabrics for decorative purposes, of glass or synthetic materials, clusters of crystal or synthetic stones in the form of roses for decorative use on covering fabrics or garments, |

| | | |
|---|---|---|
| | | jeweled buttons for garments, crosses, pendants set or loose, pierced or unpierced, jewel ornamented souvenir articles, jewel ornamented ribbon or tape for decorative purposes for garments or home furnishings in class 008. <br><br> For: Decorative and functional glass containers, jewel-ornamented glasses in class 019. |
| 1,739,479 | SWAROVSKI | For: Lighting elements and their glass parts in class 011. <br><br> For: Genuine and artificial gemstones, jewelry in class 014. <br><br> For: All purpose handbags in class 018. <br><br> For: Glass candle sticks in class 021. |
| 2,402,230 | SWAROVSKI | For: Watches in class 014. |
| 3,239,948 | SWAROVSKI | For: Cosmetics, perfumes in class 003. <br><br> For: Handles and fittings for doors and drawers, partition wall panels, all mentioned goods primarily of common metal in class 006. <br><br> For: Spectacles and spectacle frames, sun glasses; opto-electrical apparatus for day and night observation, range finding, aiming, image recording and inspection, fine mechanical parts for optical measuring instruments; binoculars; telescopic sights, magnifying glasses, rifle scopes, oculars in class 009. <br><br> For: Chandeliers and chandelier pendants, chandelier parts of glass; bath and kitchen fittings for sinks, basins, bath tubs and showers in class 011. <br><br> For: Writing instruments in class 016. <br><br> For: Hand bags, purses, wallets in class 018. <br><br> For: mirrors, frames, namely, mirror and picture frames in class 020. |

|  |  | For: Glassware, in particular figurines, decorative boxes, vases, candle sticks holders, hollow drinking glasses, tableware, namely, bowls, napkin rings, all mentioned goods primarily of glass in class 021.<br><br>For: Clothing, in particular gloves, jeans in class 025.<br><br>For: Ornaments, namely, small metal plates and glass stones arranged in motives on a transparent plastic foil, which also includes textile, leather and metal for decorative use by ironing or hot pressing; buttons for clothing, snap fasteners, spangles, jewelry hair bands, decorative hair bands, clothing buckles in class 026.<br><br>For: Decorations for Christmas trees in class 028.<br><br>For: Retail store services, in particular for gem stones, jewelry, decorative articles primarily made of glass, spectacles, bags, lighting apparatus; organization of exhibitions for commercial or advertising purposes with respect to the above-mentioned goods and services; publicity and sales promotion for others in class 035.<br><br>For: Entertainment, education and cultural activities, in particular arranging and conducting seminars, workshops, symposiums and conferences, organisation of exhibitions for cultural or educational purposes, organisation of entertainment shows, organisation of fashion shows, presentation of live show performances, musical band performances in class 041. |
|---|---|---|
| 3,864,495 | SWAROVSKI | For: Printed matter, namely, greeting cards, posters, postcards, newsletters, pamphlets, catalogues, handbooks, manuals, books and prospectuses in the fields of jewelry, fashion, design, interior design, architecture, lighting, lifestyle and cosmetics in class 016. |
| 4,570,427 | SWAROVSKI | For: Headphones, in particular stereo headphones and in-ear-headphones; MP3-players, handheld computers, tablet computers, laptop computers, personal digital assistants, global positioning system (GPS) devices, electronic organisers, electronic note pads, mobile telephones, cameras, video cameras; |

| | | |
|---|---|---|
| | | blank USB flash drives; computer stylus for use with touch screens; bags, cases and covers specifically designed for headphones, computers, digital assistants and mobile telephones; optical lenses for telescopic sights for fire arms, field glasses and spy glasses; camera lenses; cases especially made for photographic apparatus; protective helmets for sports in class 009. |
| 4,916,075 | STARDUST | For: Jewelry; genuine and costume jewelry; bracelets; bangles; necklaces; pendants; earrings; rings being jewelry; brooches; charms being personal jewelry; jewelry ornaments in class 014. |
| 1,650,596 | (swan logo) | For: Eyeglasses in class 009.<br><br>For: Lighting elements and their glass parts in class 011.<br><br>For: Watches and parts thereof, jewelry in class 014.<br><br>For: All purpose handbags in class 018.<br><br>For: Decorative items of glass, namely, animal figures, flowers, fruit bowls; glass candlesticks in class 021. |
| 2,408,747 | (swan logo) | For: Watches in class 014. |
| 3,230,029 | (swan logo) | For: sun glasses in class 009.<br><br>For: Chandeliers and chandelier pendants in class 011.<br><br>For: hand bags, purses, wallets in class 018.<br><br>For: mirrors and frames in class 020.<br><br>For: Glassware, in particular figurines, decorative boxes, vases, candle sticks holders, hollow drinking |

| | | |
|---|---|---|
| | | glasses, tableware, namely, bowls, napkin rings, all mentioned goods primarily of glass in class 021.<br><br>For: Clothing, in particular gloves in class 025.<br><br>For: Decorations for Christmas trees in class 028.<br><br>For: Retail store services, in particular for gem stones, jewelry, decorative articles primarily made of glass, spectacles, bags, lighting apparatus; organization of exhibitions for commercial or advertising purposes with respect to the above-mentioned goods and services; publicity and sales promotion for others; in class 035.<br><br>For: Entertainment, education and cultural activities, in particular arranging and conducting seminars, workshops, symposiums and conferences, all the foregoing in the field of jewelry, arts and fashion; organization of exhibitions for cultural or educational purposes, organization of entertainment shows, organization of fashion shows, presentation of live show performances in class 041. |
| 3,864,494 | (swan logo) | For: Printed matter, namely, greeting cards, posters, postcards, newsletters, pamphlets, catalogues, handbooks, manuals, books and prospectuses in the fields of jewelry, fashion, design, interior design, architecture, lighting, lifestyle and cosmetics in class 016. |

13. The above U.S. registrations for the SWAROVSKI Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the SWAROVSKI Trademarks constitute *prima facie* evidence of their validity and of Swarovski's exclusive right to use the SWAROVSKI Trademarks pursuant to 15 U.S.C. § 1057(b). The SWAROVSKI Trademarks have been used exclusively and continuously by Swarovski for many years and have never been abandoned. True and correct copies of the United

States Registration Certificates for the above-listed SWAROVSKI Trademarks are attached hereto as **Exhibit 1.**

14. The SWAROVSKI Trademarks are exclusive to Swarovski, and are displayed extensively on or in close connection with Swarovski Products, Swarovski packaging, and in Swarovski's marketing and promotional materials. Swarovski Products have long been popular around the world and have been extensively promoted at great expense. In fact, Swarovski expends millions of dollars annually promoting and marketing the SWAROVSKI Trademarks. Swarovski Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs and renown as desired luxury items. Because of these and other factors, the Swarovski name and the SWAROVSKI Trademarks have become famous throughout the United States.

15. The SWAROVSKI Trademarks are distinctive when applied to the Swarovski Products and packaging, signifying to the purchaser that the products come from Swarovski and are consistent with Swarovski's quality standards. Whether Swarovski manufactures the products itself or licenses others to do so, Swarovski has ensured that products bearing or sold within packaging bearing the SWAROVSKI Trademarks are manufactured to the highest quality standards. The SWAROVSKI Trademarks have achieved tremendous fame and recognition which has only added to the distinctiveness of the marks. As such, the goodwill associated with the SWAROVSKI Trademarks is of incalculable and inestimable value to Swarovski.

**The Defendants**

16. Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive, commercial websites and online

marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell, and on information and belief, has sold and continues to sell Counterfeit Swarovski Products to consumers within the United States, including the State of Illinois.

17. On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products using infringing and counterfeit versions of the SWAROVSKI Trademarks in the same transaction, occurrence, or series of transactions or occurrences. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Swarovski to learn Defendants' true identities and the exact interworking of their counterfeit network. In the event that Defendants provide additional credible information regarding their identities, Swarovski will take appropriate steps to amend the Complaint.

## IV.  DEFENDANTS' UNLAWFUL CONDUCT

18. The success of the Swarovski brand has resulted in its significant counterfeiting. Consequently, Swarovski has a worldwide anti-counterfeiting program and regularly investigates suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers. In recent years, Swarovski has identified thousands of domain names linked to fully interactive websites and marketplace listings on platforms such as iOffer, eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate, including the Defendant Internet Stores, which were offering for sale and selling Counterfeit Swarovski Products to consumers in this Judicial District and throughout the United States. Despite Swarovski's enforcement efforts, Defendants have persisted in creating the Defendant Internet Stores. E-commerce sales, including through Internet stores like those of Defendants, have resulted in a sharp increase in the shipment

of unauthorized products into the United States. **Exhibit 2**, Excerpts from Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report. Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id*. Over 85% of CBP seizures originated from mainland China and Hong Kong. *Id*. Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

19. Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, Western Union and/or PayPal. The Defendant Internet Stores often include content and design elements that make it very difficult for consumers to distinguish such counterfeit sites from Swarovski's website or another authorized website. Many Defendants further perpetuate the illusion of legitimacy by offering customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the Visa®, MasterCard®, and/or PayPal® logos. Swarovski has not licensed or authorized Defendants to use any of the SWAROVSKI Trademarks, and none of the Defendants are authorized retailers of genuine Swarovski Products.

20. Many Defendants also deceive unknowing consumers by using the SWAROVSKI Trademarks without authorization within the content, text, and/or meta tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Swarovski Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media

spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine Swarovski Products. Other Defendants only show the SWAROVSKI Trademarks in product images while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Swarovski Products.

21. Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores. For example, many of Defendants' names and physical addresses used to register the Defendant Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states. Other Defendant Domain Names use privacy services that conceal the owners' identity and contact information. On information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

22. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names. In addition, Counterfeit Swarovski Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Swarovski Products were manufactured by and come from a common source and that Defendants are interrelated. The Defendant Internet Stores also include other notable

common features, including use of the same domain name registration patterns, shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, similar name servers, and the use of the same text and images.

23. In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against Internet Store operators use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

24. Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Swarovski's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts or other financial accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

25. Defendants, without any authorization or license from Swarovski, have knowingly and willfully used and continue to use the SWAROVSKI Trademarks in connection with the

advertisement, distribution, offering for sale, and sale of Counterfeit Swarovski Products into the United States and Illinois over the Internet. Each Defendant Internet Store offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold Counterfeit Swarovski Products into the United States, including Illinois.

26. Defendants' use of the SWAROVSKI Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Swarovski Products, including the sale of Counterfeit Swarovski Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Swarovski.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

27. Swarovski hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 26.

28. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered SWAROVSKI Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The SWAROVSKI Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from the Swarovski Products offered, sold or marketed under the SWAROVSKI Trademarks.

29. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the SWAROVSKI Trademarks without Swarovski's permission.

30. Swarovski is the exclusive owner of the SWAROVSKI Trademarks. The United States Registrations for the SWAROVSKI Trademarks (Exhibit 1) are in full force and effect.

Upon information and belief, Defendants have knowledge of Swarovski's rights in the SWAROVSKI Trademarks, and are willfully infringing and intentionally using counterfeits of the SWAROVSKI Trademarks. Defendants' willful, intentional and unauthorized use of the SWAROVSKI Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Swarovski Products among the general public.

31. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

32. Swarovski has no adequate remedy at law, and if Defendants' actions are not enjoined, Swarovski will continue to suffer irreparable harm to its reputation and the goodwill of its well-known SWAROVSKI Trademarks.

33. The injuries and damages sustained by Swarovski have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Swarovski Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

34. Swarovski hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 33.

35. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Swarovski Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Swarovski or the origin, sponsorship, or approval of Defendants' Counterfeit Swarovski Products by Swarovski.

36. By using the SWAROVSKI Trademarks on the Counterfeit Swarovski Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Swarovski Products.

37. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Swarovski Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

38. Swarovski has no adequate remedy at law and, if Defendants' actions are not enjoined, Swarovski will continue to suffer irreparable harm to its reputation and the goodwill of the Swarovski brand.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510, *et seq.*)

39. Swarovski hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 38.

40. Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit Swarovski Products as those of Swarovski, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Swarovski Products, representing that their Counterfeit Swarovski Products have Swarovski's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

41. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

42. Swarovski has no adequate remedy at law, and Defendants' conduct has caused Swarovski to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Swarovski will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, Swarovski prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the SWAROVSKI Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Swarovski Product or is not authorized by Swarovski to be sold in connection with the SWAROVSKI Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Swarovski Product or any other product produced by Swarovski that is not Swarovski's or not produced under the authorization, control, or supervision of Swarovski and approved by Swarovski for sale under the SWAROVSKI Trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Swarovski Products are those sold under the authorization, control, or supervision of Swarovski, or are sponsored by, approved by, or otherwise connected with Swarovski;

   d. further infringing the SWAROVSKI Trademarks and damaging Swarovski's goodwill; and

   e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Swarovski, nor authorized by Swarovski to be sold or offered for sale, and which bear any of Swarovski's trademarks, including the

SWAROVSKI Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, upon Swarovski's choosing, the registrant of the Defendant Domain Names shall be changed from the current registrant to Swarovski, and that the domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of Swarovski's selection, and that the domain name registrars, including, but not limited to, GoDaddy Operating Company, LLC ("GoDaddy"), Name.com, PDR LTD. d/b/a PublicDomainRegistry.com ("PDR"), and Namecheap Inc. ("Namecheap"), shall take any steps necessary to transfer the Defendant Domain Names to a registrar account of Swarovski's selection; or that the same domain name registries shall disable the Defendant Domain Names and make them inactive and untransferable;

3) Entry of an Order that, upon Swarovski's request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as iOffer, eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate, web hosts, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, Internet search engines such as Google, Bing and Yahoo, and domain name registrars, including, but not limited to, GoDaddy, Name.com, PDR, and Namecheap, (collectively, the "Third Party Providers") shall:

   a. disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the SWAROVSKI Trademarks;

    b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the SWAROVSKI Trademarks; and

    c. take all steps necessary to prevent links to the Defendant Domain Names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index;

4) That Defendants account for and pay to Swarovski all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the SWAROVSKI Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5) In the alternative, that Swarovski be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the SWAROVSKI Trademarks;

6) That Swarovski be awarded its reasonable attorneys' fees and costs; and

7) Award any and all other relief that this Court deems just and proper.

Dated this 3rd day of October 2019.  Respectfully submitted,

    /s/ Justin R. Gaudio
    Amy C. Ziegler
    Justin R. Gaudio
    Allyson M. Martin
    Greer, Burns & Crain, Ltd.
    300 South Wacker Drive, Suite 2500
    Chicago, Illinois 60606
    312.360.0080 / 312.360.9315 (facsimile)
    aziegler@gbc.law
    jgaudio@gbc.law
    amartin@gbc.law

    *Counsel for Plaintiffs Swarovski Aktiengesellschaft and Swarovski North America Limited*